# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SALAADO MOHAMUD,

        Petitioner,

    v.                                       Case No. 09-C-146

SAHRO GUULEED,

        Respondent.

## DECISION AND ORDER

      Salaado Mohamud ("Petitioner") a citizen of the United Kingdom, filed this action seeking the return of Iman Mohamed, a minor child and Petitioner's niece, pursuant to the Hague Convention On The Civil Aspects of International Child Abduction, done at the Hague on the 25th of October, 1980 ("The Hague Convention"), the International Child Abduction Child Remedies Act ("ICARA"), 42 U.S.C. § 11603(b), and the Uniform Child Custody Jurisdiction and Enforcement Act, Wis. Stat. § 822.01 *et seq.* Iman is currently living in Green Bay with her mother, Respondent Sahro Guuleed, who is also Petitioner's sister. Respondent claims that the petition should be dismissed because the Hague Convention is no longer applicable since Iman has now reached her sixteenth birthday. Even aside from her daughter's age, Respondent argues that the petition should be denied because the petitioner did not have rights of custody within the meaning of the Hague Convention and, in any event, return would violate the fundamental rights of the mother and is contrary to the mature objections of the child. For the reasons set forth below, the petition will be denied and the case dismissed.

## BACKGROUND

Iman Mohamed was born to respondent Sahro Guuleed in Mogadishu, Somalia on April 22, 1993. Shortly after her birth, her mother was detained by soldiers and separated from her daughter. (Decl. of Sahro Guuleed ¶ 3.) Iman was taken in by Petitioner and her family, who escaped to the Netherlands as refugees in late 1995. Shortly after their arrival, temporary guardianship of Iman was assigned to the De Opbouw Foundation, a Dutch child welfare organization, and Petitioner and her husband were named foster parents. (Aff. of Cheri L. Baden, Exs. D., E. and F.) Temporary guardianship of Iman was later transferred to the Nidos Foundation and thereafter terminated in October of 2004 after the family moved to the United Kingdom. (*Id.*, Ex. H.) Iman continued to live with Petitioner as a member of her family after the move to the United Kingdom, but at no time was a formal order of custody or guardianship sought.

In the meantime, respondent eventually made her way to the United States as an asylum-seeker and moved to Green Bay, Wisconsin. (Guuleed Decl. ¶ 4.) In 2002, Respondent found out that her daughter might be in Germany. She flew to Germany and spoke to former Somali contacts but was unable to locate her daughter. (*Id.* ¶ 7.) In 2004, Respondent learned that her daughter was supposedly living in England. She again located Somali contacts and this time discovered her daughter's whereabouts. She made telephone contact and began developing a relationship with her daughter. (*Id.* ¶ 8.) Accompanied by an adult cousin, Iman was allowed to visit her mother in 2005. Although Respondent wanted her daughter to remain with her at that time, she felt unsure about changing her daughter's life at that time since she appeared happy. (*Id.* ¶ 9.) Beginning in 2007, however, Iman told Respondent that her relationship with her foster family had deteriorated and involved physical and verbal abuse. In early 2008, Petitioner agreed to allow Iman to visit her

2

mother in the United States for two weeks, from February 11 through February 25. On February 15, 2008, Respondent contacted Petitioner to tell her that her minor child would not be returning and would be staying in the United States. (*Id.* ¶¶ 10,11; Mohamud Decl. ¶¶ 4.)

Petitioner immediately sought assistance from government agencies in the United Kingdom to locate and secure the return of the minor child. Since Iman has arrived in Green Bay, however, she has become immersed in life in Green Bay. She has made friends and established herself as a good student at Bay Port High School. She was accelerated a grade level and is currently a junior at Bay Port High School. She hopes to attend college and eventually become a doctor.

## DISCUSSION

The International Child Custody Remedies Act ("ICARA"), 42 U.S.C. § 11601 *et seq.* implements the Hague Convention On The Civil Aspects Of International Child Abduction ("Convention"), T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 (Oct. 25, 1980), to which the United States and United Kingdom are both parties. Under ICARA, a petitioner seeking return of a child must establish by a preponderance of the evidence that the child has been wrongfully removed or retained within the meaning of the convention. 42 U.S.C. § 11603(e)(1). Article 3 of the convention states:

> The removal or retention of a child is to be considered wrongful where-
>
> (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, art. 3, T.I.A.S. No. 11,670, at 9. Even if a petitioner demonstrates that a child has been wrongfully removed or retained, however, a court may decline to order the return of the child if the

3

respondent demonstrates that one of the affirmative defenses set forth in the Convention. Article 20 provides that "the return of the child under the provision of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested state [i.e., the United States] relating to the protection of human rights and fundamental freedoms." Convention, art. 20, T.I.A.S. No. 11670, at 6. In addition, Article 13 provides that "the judicial or administrative authority . . . may refuse to order the return of the child if it finds that the child objects to being returned and has attained the age and degree of maturity at which it is appropriate to take account of [her] views." Convention, art. 13, T.I.A.S. No. 11,670, at 5. Finally, the convention only applies to children under the age of sixteen. Convention, art. 4, T.I.A.S. No. 11,670 ("The Convention shall cease to apply when the child attaint the age of 16 years.")

Following her initial response to the petition, Respondent filed a motion for judgment on the pleadings noting that Iman had turned sixteen on April 22, and thus the convention no longer applied. In response, petitioner notes that the convention suggests that a decision on a petition filed thereunder be reached within six weeks of the date of filing. Petitioner notes that she advised the court of this in her cover letter enclosing the petition and other papers, but that the hearing on her petition was not scheduled until some nine weeks later. Unfortunately, the cover letter was not docketed and the court was not made aware of the need for scheduling a hearing before Iman turned sixteen. No objection was made at the time the hearing was scheduled

In any event, Petitioner argues that her rights should not be lost due to a scheduling or logistical error that was out of her control. Petitioner also notes that there is no other similar age requirement in the Hague Convention or the ICARA. Moreover, the Uniform Child Custody Jurisdiction Act defines "child" as someone under the age of eighteen. Wis. Stat. § 822.2(2). Given

4

the facts of this case, Petitioner argues that the court should construe the statute broadly as allowing it to retain jurisdiction since the petition was filed before Iman was sixteen, even though she has since reached that age.

I see no reasonable interpretation of the convention that would allow the court to continue to exercise jurisdiction now that the child has attained the age of sixteen years. Article 4 states unequivocally "[t]he convention shall cease to apply when the child attains the age of sixteen years." If the drafters intended that the child's age at the time the petition is filed were to control, the language could easily have so indicated. Here, notwithstanding that the petition was filed in mid-February, the child has now reached the age of sixteen and therefore the court lacks jurisdiction under the Convention to order her return.

I also note, however, that the result would be the same even if the hearing had been placed on the court's calendar earlier. Indeed, it is questionable whether Petitioner has even established a prima facie case for return of the child under the Hague Convention, even aside from the child's age. In order to establish such a case, petitioner must show that the retention of the child was "in breach of rights of custody attributed to a person . . . under the laws of the State in which the child was habitually resident immediately before removal or retention." Convention, art. 3. Petitioner has arguably failed to make such a showing here. While it is true that Petitioner cared for Iman during the period prior to her retention in the United States, she at no time sought a formal custody order in the United Kingdom where the family had resided for some four years. Petitioner relies on documents showing that a court in the Netherlands allowed the Nedos Foundation to relinquish custody of the child after she took her to the United Kingdom in 2004. But the Netherlands is not the state in which Iman was habitually resident immediately before the retention.

5

Petitioner argues that *In re G (A Minor) Abduction* [2002] 2 FLR 703 (High Court of Justice, Family Division, England), and other United Kingdom cases stand for the proposition that a non-parent can have legal "rights of custody" even though a formal court order has not been entered. I need not resolve that issue, however, because even if Petitioner did have "rights of custody" as that term is defined by the Convention, I am satisfied that Respondent has established that return of Iman would violate the mother's fundamental rights under United States law and that it would be contrary to the mature objections of the child.

As noted above, Article 20 of the convention provides that "the return of the child under provision of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested state relating to the protection of human rights and fundamental freedoms." Convention, art. 20. A fundamental freedom guaranteed by the Constitution and treaties of the United States is the right of a parent to the custody, care and control of a minor child as against third parties. The interests of the parents in the case, custody, and control of their children is perhaps the oldest of the fundamental liberty interests protected by the Fourteenth Amendment. *Troxil v. Granville*, 530 U.S. 57, 65 (2000). *See also Stanley v. Illinois*, 405 U.S. 645, 651 (1972)("It is plain that the interest of a parent and the companionship, care, custody and management of his or her children 'come[s] to this court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements'"); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972)("The history and culture of Western civilization reflect a strong tradition of parental concern form the nurture and upbringing of their children. This primary role of parents in the upbringing of their children is now established beyond debate as an enduring American tradition"); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978)("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected").

6

In this case, Petitioner's interests are in conflict with those of the natural mother whose rights have never been terminated. Indeed, from the record it appears that the natural mother lost custody of the child through no fault of her own when she herself was the victim of the chaotic circumstances that have plagued the Country of Somalia over the past two decades. This is not the typical Hague Convention case where one biological parent is battling the other for custody of their child. Petitioner must certainly be commended for taking Iman into her home and raising her. But this act of generosity is not sufficient to cut off the natural rights of the mother to custody and control of her child now that she is able to assume such responsibility.

In addition, Article 14 of the Hague Convention provides that "the judicial or administrative authority may . . . refuse to order the return of the child if it finds that the child objects to being returned and has attained the age and degree of maturity at which it is appropriate to take account of her view." Convention, art. 14. In this case, Iman is now sixteen years of age. Even at the time the petition was filed, she was fifteen years of age and a junior in high school. She testified at the hearing held on the petition, and I found her to be a mature and accomplished young woman. She testified as to the reasons she chose to remain with her mother, and while I decline to make any findings as to the actual conditions she experienced in Petitioner's home, her reasons did not suggest a lack of maturity or any undue influence by her mother or any other party. She appeared in court not only with her mother, but also another aunt who lives in the United States and her grandfather. She has been enrolled in a Green Bay area high school since shortly after she arrived a year ago and has made friends here. She spoke of a wide variety of outside activities she enjoys and her plans to further her education and eventually become a doctor.

7

Under these circumstances, her views are certainly entitled to significant weight. As another court has observed, "the convention only applies to children who are under sixteen years of age, Convention, art. 3, T.I.A.S. No. 11,670, at 5, and the authoritative commentary to the convention suggests that children who are nearing sixteen years should ordinarily have their own wishes respected." *McManus v. McManus*, 354 F. Supp. 2d, 62, 72 (D. Mass. 2005). *See also in re Robinson*, 983 F. Supp. 1339, 1343 (D. Colo. 1997)("It would be very difficult to accept that a child of, for example, fifteen years of age, should be returned against her will."(quoting Elisa Perez-Vera, Explanatory Report by Ellisa Perez-Vera, in 3 Actes et documents de la Quatorzieme session 426, 433 (1982)). Given Iman's age, even at the time the petition was filed, her views would be entitled to substantial weight.

In sum, I conclude that the petition should be denied since the child has now reached the age of sixteen and the Convention no longer applies. Considering the strong legal protection the United States affords the natural rights of the mother and the mature views of the child, as well as the absence of any custody order entered by the United Kingdom placing the child with her aunt, the petition would be denied in any event. Having concluded that Petitioner's claim under the Convention and ICARA fails, I decline to exercise jurisdiction over Petitioner's claim under the Uniform Child Custody Jurisdiction and Enforcement Act, Wis. Stat. § 822.01 *et seq*. Accordingly, that claim will be dismissed also, but without prejudice. See 28 U.S.C. § 1367(c).

**SO ORDERED** this __4th__ day of May, 2009.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

8